# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Britton, Minors.

UNPUBLISHED
September 27, 2016

No. 332087
Hillsdale Circuit Court
Family Division
LC No. 14-000542-NA

Before: MURRAY, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Respondent father appeals as of right the trial court's order terminating his parental rights to the minor children, KB and JB, under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), (c)(*ii*) (other conditions exist continue to exist and where parent has not rectified the conditions), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that the child will be harmed if returned to the parent).[1] We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

KB was born in September 2014, and the Department of Health and Human Services ("the DHHS")[2] filed a petition for her removal the same day. The petition alleged that respondent and KB's mother recently tested positive for illegal substances and that mother had voluntarily terminated her parental rights to prior children. Respondent had a history of substance abuse and two convictions for driving while impaired, as well as an expunged out-of-state conviction for possession of ecstasy. Following an adjudication hearing, the trial court assumed jurisdiction over KB, and she was placed with relatives. Between September and December 2014, respondent and mother followed their case evaluation plan and produced negative drug screens, and KB was returned to their care in December 2014. But between January and March 2015, respondent repeatedly tested positive for drugs and stopped attending

---

[1] The court also terminated the parental rights of the children's mother, but she does not have an appeal pending and is not a party to this appeal.

[2] Formerly, the Department of Human Services and the Department of Community Health were separate. The Department of Human Services initiated this matter. Because the departments are now one, we will refer to the department as "DHHS."

substance abuse counseling. KB was again removed from respondent's and mother's care in March 2015 and placed with relatives.

Respondent continued to abuse drugs and alcohol after KB was removed from his care for a second time. He repeatedly produced positive drug screens, including for cocaine, Tramadol, methadone, and benzodiazepine, and he was arrested for his third offense of operating a motor vehicle under the influence of alcohol, to which he later entered into a plea agreement and was sentenced by the trial court. He also failed to comply with the case service plan requirements that he attend AA/NA meetings and substance abuse and relationship counseling. Although he attended some parenting visits, respondent did not take advantage of all of the parenting time offered, and his visits eventually became sporadic. Respondent's substance abuse assessment found that he was dependent on alcohol and marijuana (for which he had no medical marijuana card), and that he had no intention of quitting.

In September of 2015, JB was born. At birth, JB tested positive for amphetamines, methamphetamines, THC, and Klonopin. JB was immediately taken into custody and placed with relatives upon his release from the hospital for treatment of the manifestations of withdrawal. Approximately two weeks after JB's birth, respondent was sentenced to 11 months in jail for two separate counts of domestic abuse against the mother. The DHHS filed an amended supplemental petition and the trial court assumed jurisdiction over JB.

On February 5, 2016, the DHHS filed a petition for termination of respondent's and mother's parental rights. A termination hearing was held March 4, 2016. At the time, KB was 18 months old, and JB was 6 months old. The principal concerns with respect to respondent were his severe substance abuse, failure to comply with the case service plan, and history of domestic violence. The evidence established that respondent failed to complete substance abuse treatment and relationship counseling, and was still abusing drugs and alcohol. Following the termination hearing, the trial court found that grounds for termination were established under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), and that termination was in the children's best interests.

## II. ANALYSIS

### A. STATUTORY GROUNDS

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). We review the trial court's determination for clear error. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

The trial court did not clearly err in finding that a statutory ground for termination was established by clear and convincing evidence. *VanDalen*, 293 Mich App at 139. MCL 712A.19b(3)(g) provides that a trial court may terminate parental rights when "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no

reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Here, the trial court found that respondent could not provide proper care or custody to his children because of his substance abuse and domestic violence issues. It also found that there was no reasonable expectation respondent would be able to change within a reasonable time considering the ages of the children.

The record supports that respondent repeatedly tested positive for drugs and testified that he did not believe there was anything wrong with marijuana. He admitted at the termination hearing that he was sometimes under the influence of drugs when KB was in his care. Respondent had three OWI convictions, including one from July 2015—during the pendency of these proceedings—and he was incarcerated at the time of the termination hearing. Respondent also failed to comply with, and thus benefit from, his case service plan, which required that he attend AA/NA meetings and substance abuse and relationship counseling and that he produce negative drug screens and maintain a substance-free lifestyle. His caseworker reported that he did not meaningfully complete any substance abuse program. At the termination hearing, respondent candidly admitted that he would try his best to "stay clean," but that he would not "throw out any ghostly promises 'cause you never know."

Respondent also had a history of domestic abuse. He was arrested for domestic assault on May 14, 2015, and was provided with AA/NA meetings and various family and relationship counseling services, but he failed to take advantage of the services offered. On August 8, 2015—also during these proceedings—respondent was arrested for domestic assault for the second time. At the time of the termination hearing, respondent testified that, upon his release from jail, there would be no more domestic violence against mother because he was no longer in a relationship with her. However, he again candidly testified that he "can't answer the future" and "can't tell you what will happen six months from now." According to respondent, he planned to "try harder than I ever have," but he did not know whether he would be able to refrain from domestic abuse.

The record supports that it was not clear error for the trial court to find that respondent could not provide proper care and custody because of his substance abuse and domestic violence issues and that there was no reasonable expectation that he would be able to provide proper care and custody within a reasonable time considering the ages of the children. MCL 712A.19b(3)(g); *VanDalen*, 293 Mich App at 139.[3] Although respondent contends that there was no evidence or expert testimony indicating that he would be unable to provide proper care and custody within a reasonable time, the trial court was entitled to consider respondent's 18-month track record of an inability to wean himself from drugs and ongoing improper conduct

---

[3] Because we conclude that there was no error in finding grounds for termination of parental rights under subsection (g), we need not consider whether there were alternative grounds under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j). *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009) (finding that, where "at least one ground for termination existed, we need not consider the additional grounds upon which the trial court based its decision").

affecting his ability to provide proper care and custody despite corrective services and recommended treatment efforts. *See In re Moss*, 301 Mich App 76, 81; 836 NW2d 182 (2013).

## B. BEST INTERESTS

Respondent also challenges the trial court's finding that termination of respondent's parental rights was in the children's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). When determining the best interests of the child, the focus should be on the child, not the parent, *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013), and the trial court must consider the record as a whole, *In re JK*, 468 Mich 202, 211; 661 NW2d 216 (2003). The trial court may consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). It may also consider the length of time the child was in foster care and the likelihood that the child could be returned to the parent's home in the foreseeable future. *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). Other factors include evidence that the child is not safe with the parent and is thriving in foster care, *In re VanDalen*, 293 Mich App at 141, "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption," *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). In deciding whether to terminate parental rights, it is appropriate, but not required, for a trial court "to consider many of the concerns underlying those best interests factors" under the Child Custody Act, MCL 722.23. *In re JS & SM*, 231 Mich App 92, 102; 585 NW2d 326 (1998). MCL 722.23 provides that, when determining the best interests of the child for purposes of child custody, the trial court may consider a variety of factors, such as the love, affection, and other emotional ties between the parties involved and the child, the capacity of the parties to give the child love, affection, guidance, and education, and the capacity of the parties to provide the child with food, clothing, and medical care. We review the trial court's decision regarding the child's best interests for clear error. *Moss*, 301 Mich App at 90.

The trial court found that termination of respondent's rights was in the children's best interests because respondent did not have a parent-child bond with the children, could not provide stability and permanency, and did not have the capacity to provide love, affection, guidance, education, food, clothing, or medical care. The court also considered respondent's substance abuse and domestic violence issues and the fact that the children were "very adoptable."

The evidence supports the trial court's finding that termination of parental rights was in the children's best interests. First, the record does not support that respondent and the children had an appropriate parent-child bond. Although it is clear that respondent loved KB, he never used all of the parenting time offered, even before he was incarcerated. KB, who was 18 months old at the time of termination, could identify respondent as "dad," but also identified her foster parent as "dad." With respect to JB, there is nothing to support that respondent and JB had any bond whatsoever. JB was placed into foster care at birth, and respondent had only seen JB twice: on the day of his birth, and in court on one occasion. Considering the young ages of the children, the trial court did not err in finding that the children's need for permanence and stability

-4-

outweighed any bond with respondent. Further, the record supports that respondent was unable to provide proper care to the children. He had not rectified his issues with substance abuse and domestic violence, and the record supports that the children would not be safe in his care. See *In re VanDalen*, 293 Mich App at 141. Accordingly, the evidence established that termination of respondent's parental rights was in the children's best interests. *In re HRC*, 286 Mich App at 459.

Respondent also argues on appeal that the trial court erred by failing to consider that the children were placed with respondent's relative when it made its best-interest ruling. "[A] child's placement with relatives weighs against termination" and the fact that a child is living with a relative is an "explicit factor" that must be considered when determining whether termination is in the best interests of the child. *In re Mason*, 486 Mich 142, 168-169; 782 NW2d 747 (2010). "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *In re Olive/Metts*, 297 Mich App at 43. However, it is not required to establish a guardianship instead of terminating parental rights if termination is in the child's best interests. See MCL 712A.19a(7)(c); *Mason*, 486 Mich at 168-169; *In re McIntyre*, 192 Mich App 47, 52-53; 480 NW2d 293 (1991).

Here, the record supports that permanent placement with relatives was not an option for the children. Although they were temporarily placed with relatives at the time of the termination hearing, the relatives were not willing to adopt and were not interested in a juvenile guardianship. No other relatives were identified for the court to consider for placement. The caseworker considered relative placement when recommending that respondent's rights be terminated and noted that there were no relatives available for placement. Further, the record shows that the trial court knew that permanent placement with relatives was not an option for the children and considered the caseworker's recommendation when making its best-interest decision. Therefore, the record indicated that the trial court considered the children's temporary relative placement and the fact that the relatives would not provide a more permanent home for the children. Accordingly, the trial court did not erroneously fail to consider that the children were placed with respondent's relative at the time of termination.

## C. PARTICIPATION BY VIDEO CONFERENCE

Respondent also argues that the trial court erred when it allowed him to participate in the termination hearing via video conference. Because this issue is unpreserved, it is reviewed for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*.

First, the Michigan Court Rules specifically contemplate allowing an incarcerated parent to participate in termination proceedings through video conference. "MCR 2.004 requires the court and the petitioning party to arrange for telephonic communication with incarcerated parents whose children are the subject of child protective actions." *In re Mason*, 486 Mich at 152-153; MCR 2.004(A)-(C). MCR 2.004 applies to actions regarding "termination of parental rights" where "a party is incarcerated under the jurisdiction of the Department of Corrections." MCR 2.004(A)(2). "[T]o comply with MCR 2.004, the moving party and the court must offer the

parent the opportunity to participate in each proceeding in a child protective action." *In re Mason*, 486 Mich at 154.

In *In re Vasquez*, 199 Mich App 44, 49; 501 NW2d 231 (1993), this Court found that "there is no absolute right to be physically present at the dispositional hearing of a proceeding to terminate parental rights in Michigan." Instead, an incarcerated parent's right to be physically present at termination proceedings is determined using the three-part balancing test from *Mathews v Eldridge*, 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976). *Vasquez*, 199 Mich App at 50. Under this test, a trial court must consider (1) the private interest at stake; (2) the incremental risk of an erroneous deprivation of that interest in the absence of the procedure demanded; and (3) the government's interest in avoiding the burden the procedure would carry. *Id*. at 47.

Here, respondent was incarcerated at the Hillsdale County jail at the time of the termination hearing, and he participated in the hearing by way of video conference. Applying the balancing test set out in *Mathews*, respondent's participation in the termination hearing via video conference did not violate his right to due process. First, respondent's interest in his parental rights is a compelling interest. *Vasquez*, 199 Mich App at 47. However, the risk of an erroneous deprivation of that interest was not increased by his participation by video. The trial court ensured that he could see and hear the proceedings, and respondent was able to provide testimony on direct and cross examination. There is nothing to support that, at any time, respondent was unable to hear or see the termination hearing proceedings, or to support that he was unable to communicate any concerns with the trial court. Because there was two-way communication, respondent presumably could have asked to confer with his counsel. There is nothing on the record to support that he ever attempted to consult with his counsel and was denied the opportunity. The record does not support that respondent's participation in the hearing was hindered whatsoever by the trial court's decision to allow him to participate through video conference.

Turning to the third prong of the *Mathews* balancing test, the state's financial and administrative burden in bringing respondent from the jail to the courthouse would have been low, especially given that both are located within the same county. However, the burden of allowing him to participate via video was certainly less than the burden of transferring him from the jail to the courthouse, and the burden of ensuring respondent's physical presence would have been higher than the nonexistent risk of erroneous deprivation in this case. Moreover, like the respondent in *Vasquez*, there is no indication that he ever requested that he be allowed to be physically present for the termination hearing. *Vasquez*, 199 Mich App at 50. Although respondent was not physically present at the hearing, he was able to fully participate by video conference. Under the *Mathews* balancing test, respondent's physical absence from the termination hearing did not amount to a violation of his due process rights. *Id*.

Moreover, even if the trial court erred in allowing respondent to participate via video, there is nothing to support that the error was outcome determinative. *Utrera*, 281 Mich App at 8. Respondent has not provided anything to establish that the result might have been different if he had been able to be physically present in the courtroom. Therefore, he has not established plain error affecting substantial rights.

Respondent also argues on appeal that his counsel was ineffective for failing to object to father's participation by video conference. "Although the constitutional provisions explicitly guaranteeing the right to counsel apply only in criminal proceedings, the right to due process also indirectly guarantees assistance of counsel in child protective proceedings. Thus, the principles of effective assistance of counsel developed in the context of criminal law apply by analogy in child protective proceedings." *In re CR*, 250 Mich App 185, 197-198; 646 NW2d 506 (2002). Generally, to establish the ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v Pickens*, 446 Mich 298, 309; 521 NW2d 797 (1994). Because there is nothing on the record to support that the result of the proceeding would have been any different had respondent been physically present in the courtroom, father's ineffective assistance of counsel claim fails.

Affirmed.


/s/ Christopher M. Murray
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering